UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANDRE BOLDEN,<br><br>Plaintiff,<br><br>v.<br><br>ALFONSO ACOSTA, et al.,<br><br>Defendants. | Case No. 20-cv-04254-SK<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Regarding Docket Nos. 86, 92 |

On April 15, 2022, Plaintiff Deandre Bolden ("Plaintiff") moved for summary judgment. (Dkt. No. 86.) Defendants Contra Costa County ("the County"), Sheriff's Deputy Alfonso Acosta ("Acosta"), Sheriff's Deputy Nathaniel Cope ("Cope"), and Sheriff's Deputy D. Gonzalez ("Gonzalez") (collectively, "Defendants") opposed the motion and cross-moved for summary judgment. (Dkt. No. 92.) Plaintiff in turn opposed Defendants' cross-motion for summary judgment. (Dkt. No. 96.) The Court heard oral argument on the parties' cross-motions for summary judgment on June 13, 2022. All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. (Dkt. Nos. 2, 13.) Having considered the submissions of the parties, the record in the case, and the relevant legal authorities, and having had the benefit of oral argument, the Court HEREBY DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment, for the reasons set forth below.

**BACKGROUND**

Plaintiff is a citizen of Richmond, California. (Dkt. No. 79 ¶ 1.) As of April 28, 2022, Plaintiff is incarcerated in a Contra Costa County jail. (Dkt. No. 93-5 (Francisco Dec. ¶ 13).) Plaintiff alleges that on November 17, 2019, he was an inmate at the Martinez Detention Center, one of Defendant Contra Costa County's detention facilities. (Dkt. No. 79 ¶ 10.) On the morning

1  of that day, Plaintiff was using free time to heat up breakfast in the microwave at around 8:30 a.m.
2  (*Id.*)  Plaintiff has been diagnosed with mental illnesses, including schizophrenia, delusional
3  disorder, and psychosis.  (*Id.* ¶ 11.)  As Plaintiff was heating up his food, Defendant Nathaniel
4  Cope ("Cope") informed inmates that free time was over, lockdown was being imposed, and
5  inmates must return to their cells.  (*Id.* ¶ 13.)  Plaintiff, remembering his food, decided to go
6  downstairs from his cell toward the microwave rather than returning to his cell as ordered.  (*Id.* ¶
7  14.)  Defendant Alfonso Acosta ("Acosta") ordered Plaintiff to return to his cell, grabbed his arm
8  to make him return to his cell, and began escorting him back toward the stairs.  (*Id.* ¶ 15.)  At the
9  foot of the stairs, Plaintiff alleges that he turned around to face Acosta in order to ask him a
10 question, without striking, lunging, or making a verbal threat directed at Acosta.  (*Id.* ¶ 16.)
11 Acosta, Cope, and Gonzalez attempted to take Plaintiff to the ground by grabbing his leg, pushing
12 him against the wall, and knocking him over.  (*Id.* ¶¶ 17-18.)  With Plaintiff on his stomach,
13 Acosta straddled his back, Gonzalez placed his legs in a figure-four lock, and Cope attempted to
14 gain control of his right arm.  (*Id.* ¶ 19.)  Plaintiff alleges that his only noncompliance at this point
15 consisted of tensing the muscles in his arms, which he was holding away from his torso.  (*Id.* ¶
16 20.)  Plaintiff alleges that, in order to get control of Plaintiff's arms, Cope issued a knee strike,
17 which hit Plaintiff in the face.  (*Id.* ¶ 21.)  As a result of the knee strike, Plaintiff alleges that he
18 suffered swollen black eyes, bruises on his face, headaches, memory loss, a displaced bone
19 fracture, and emotional distress.  (*Id.* ¶ 22.)

20         Plaintiff further alleges that he suffers severe mental impairment which prevented him
21 from understanding the nature of the Contra Costa County grievance process and from complying
22 with the requirements of that process to file a grievance.  (*Id.* ¶¶ 24-25.)  Plaintiff alleges that only
23 when he was released from custody did he understand, through consulting with family and an
24 attorney, that he could seek redress for the incident.  (*Id.* ¶ 26.)  Plaintiff alleges that the Contra
25 Costa County custodial grievance process was unavailable to him because, by the time he realized
26 he wanted to file a claim, he was no longer incarcerated, and while he was incarcerated, he could
27 not understand the process.  (*Id.* ¶ 27.)  Separate from the grievance process with Contra Costa
28 County, Plaintiff filed a government claim against Contra Costa County pursuant to California

Government Code § 910, *et seq.*, on April 13, 2022, and his claim was rejected on May 13, 2020. (*Id.* ¶ 28.)

Plaintiff brings four claims based on the alleged incident. First, Plaintiff brings a claim under the Fourteenth Amendment for excessive force pursuant to 42 U.S.C. § 1983. (*Id.* ¶¶ 29-32.) Second, Plaintiff brings a common law claim for battery. (*Id.* ¶¶ 33-37.) Third, Plaintiff brings a claim for violation of California's Bane Act. (*Id.* ¶¶ 38-43.) Fourth, Plaintiff brings a common law claim for negligence. (*Id.* ¶¶ 44-48.) Plaintiff seeks compensatory, general, and punitive damages, and attorneys' fees. (*Id.*)

Plaintiff was incarcerated at the Martinez Detention Center on October 28, 2019. (Dkt. No. 93-5 (Francisco Dec. ¶ 4).) The incident at issue occurred on November 17, 2019, while Plaintiff was incarcerated at the Martinez Detention Center. (Dkt. No. 79.) At a medical examination at approximately 10:00 a.m. directly following the 8:30 a.m. incident, Plaintiff's mood and affect were reported to be normal. (Dkt. No. 93-12 (Rodriquez Dec. Ex. L).) At a medical examination at 8:50 a.m. on the following day, November 18, 2019, Plaintiff showed a clear thought process, answered questions coherently, was alert and oriented, and denied auditory and visual hallucinations. (Dkt. No. 93-11 (Rodriquez Dec. Ex. K).) On November 19, 2019, at 8:30 a.m., Plaintiff's 48-hour time frame for filing a formal grievance under Contra Costa County policy expired. (Dkt. No. 93-3 (Normandin Dec. ¶¶ 6-7).) Both before and after the period of incarceration in question here, Plaintiff acknowledged his understanding of the Contra Costa County grievance procedure by signing a form each time he was incarcerated in Contra Costa County, for a total of 17 acknowledgements beginning on July 6, 2011, and ending December 23, 2020. (Dkt. No. 93-5 (Francisco Dec. ¶¶ 4-5).) Plaintiff was released from Contra Costa County custody on January 15, 2020. (Dkt. No. 33-1 (Rodriquez Dec. Ex. A).) Plaintiff was rebooked into custody in Contra Costa County on April 10, 2020. (Dkt. No. 93-5 (Francisco Dec. ¶ 4).) On June 24, 2020, Sacramento County records indicate that Plaintiff was arrested for robbery and obstructing a peace officer. (Dkt. 103-5.)

Plaintiff alleges that he was incarcerated in Sacramento County, rather than Contra Costa County, beginning on June 24, 2020, and ending on December 23, 2020. (Dkt. 102 (Bolden Dec.

3

1 ¶ 3).) Plaintiff filed his original Complaint in his matter on June 26, 2020. (Dkt. 1.)
2 Plaintiff was reincarcerated in Contra Costa County on December 23, 2020. (Dkt. No. 93-5
3 (Francisco Dec. ¶ 4).) Plaintiff filed his First Amended Complaint on January 3, 2021. (Dkt. No.
4 28.) Plaintiff filed his Second Amended Complaint on March 2, 2021. (Dkt. No. 48.) Plaintiff
5 filed his Third Amended Complaint on September 30, 2021. (Dkt. No. 79.) On the date that the
6 Third Amended Complaint was filed, Plaintiff was incarcerated in Contra Costa County. (Dkt.
7 No. 93-5 (Francisco Dec. ¶ 4).) Plaintiff remains incarcerated in Contra Costa County as of April
8 28, 2022. (Dkt. No. 93-5 (Francisco Dec. ¶ 13).) None of Plaintiff's Contra Costa County
9 booking files contains a grievance report related to the incident at issue. (Dkt. No. 93-5 (Francisco
10 Dec. ¶ 4).) The Third Amended Complaint does not incorporate any of the prior complaints,
11 including the Original Complaint, First Amended Complaint, and Second Amended Complaint, by
12 reference. (Dkt. No. 79.) Plaintiff claims in a declaration submitted in support of his opposition
13 to Defendant's cross-motion for summary judgment that he was unable to exhaust the Contra
14 Costa County grievance procedures because he is severely mentally ill. (Dkt. No. 97 (Bolden Dec.
15 ¶ 2).) Plaintiff declares that he hears voices and the voices instructed him not to comply with the
16 grievance procedure. (*Id.* (Bolden Dec. ¶ 4).) Due to his general level of mental illness and the
17 voices, Plaintiff claims that the Contra Costa County grievance procedure was effectively not
18 available to him while he was incarcerated. (*Id.* (Bolden Dec. ¶ 5-6).) Plaintiff submits no
19 evidence in support of his statements contained in the declaration.

20 Plaintiff moves for summary judgment, arguing that Cope's knee strike to Plaintiff's face
21 constituted excessive force in violation of the Fourteenth Amendment, and that Acosta and
22 Gonzalez were integral participants in the incident. (Dkt. No. 86-1.) Plaintiff argues that the
23 defendant officers are not entitled to qualified immunity, and that all Defendants are liable for
24 battery, negligence, and violation of the Bane Act. (*Id.*) Plaintiff does not address the issue of
25 exhaustion under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)a, ("PLRA"), which the
26 Court had previously instructed was essential to demonstrating the viability of his claims (Dkt.
27 No. 63).

28 Defendants counter by cross-moving for summary judgment, arguing that Plaintiff's claims

under both 42 U.S.C. § 1883 and state common law are barred by his failure to exhaust the Contra Costa County custodial grievance process under the PLRA.  (Dkt. No. 92.)  In the alternative, Defendants argue that summary judgment is inappropriate because the reasonableness of the knee strike is an issue for the jury, which could find the knee strike reasonable.  Defendants also argue that Acosta and Gonzalez are not liable under the integral participant doctrine, and that all three officer Defendants are entitled to qualified immunity.  (*Id.*)  In support of their cross-motion for summary judgment, Defendants adduce further facts aimed at controverting Plaintiff's allegations that he was not threatening prior to and during his November 17, 2019 encounter with the Defendant officers, as relevant to Plaintiff's substantive claims.  (Dkt. 93.)  However, the Court does not describe that evidence here because the Court finds below that the procedural facts related to the timing of plaintiff's incarceration and filing of complaints, as relevant to whether Plaintiff properly exhausted his claims under the PLRA, are dispositive in this case.

## DISCUSSION

**A.   Legal Standards.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

**B.   Analysis.**

    **1.   The PLRA's exhaustion requirements apply to Plaintiff's claims.**

1    Plaintiff's claims are subject to the exhaustion requirement imposed by the PLRA, 42
2    U.S.C. § 1997e(a).  The PLRA requires that "a prisoner confined in any jail, prison, or other
3    correctional facility" exhaust all administrative remedies before filing suit based on prison
4    conditions pursuant to 42 U.S.C. § 1983 or any other federal law.  42 U.S.C. § 1997e(a).
5    Exhaustion is mandatory, *Booth v. Churner*, 532 U.S. 731, 739-40 (2001), and proper exhaustion
6    that "complies with the system's critical procedural rules" must be observed, *Woodford v. Ngo*,
7    548 U.S. 81, 95 (2006).  Failure to exhaust available procedural remedies under the PLRA is not
8    interpreted in a draconian manner, but rather constitutes an affirmative defense that a defendant
9    must plead and prove.  *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (citing *Jones v. Bock*,
10   549 U.S. 199, 204, 216 (2007)).  The Court looks to the custody status of the Plaintiff when the
11   operative complaint was filed to determine whether the Plaintiff is subject to the exhaustion
12   requirement imposed by the PLRA.  *Jackson v. Fong*, 870 F.3d 928, 937 (9th Cir. 2017) ("A
13   plaintiff who was a prisoner at the time of filing his suit but was not a prisoner at the time of his
14   operative complaint is not subject to a PLRA exhaustion defense.")

15   Here, the question is whether Plaintiff was incarcerated in Contra Costa County jail when
16   his "operative complaint" was filed.  Plaintiff argues that the operative complaint was the original
17   Complaint, when he was incarcerated in Sacramento County jail – not Contra Costa County jail -
18   and thus that he was not required to exhaust his claim through Contra Costa County before he filed
19   this suit.  Defendants argue that the operative complaint is the Third Amended Complaint, which
20   Plaintiff filed when he was incarcerated in Contra Costa County jail, and thus that the PLRA
21   required Plaintiff to file a grievance before he filed this suit.

22   The analysis thus turns on the question of which of the complaints is the "operative
23   complaint."  "[T]he general rule is that an amended complaint supersedes the original complaint
24   and renders it without legal effect."  *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir.
25   2012); *see also* § 1476 Effect of an Amended Pleading, 6 *Fed. Prac. & Proc. Civ.* § 1476 (3d. ed.)
26   ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and
27   remains in effect throughout the action unless it subsequently is modified.")  "Nothing in the
28   PLRA's exhaustion requirement creates an exception to this basic premise of our jurisprudence on

6

pleadings." *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010). "[I]t is well-established that an amended pleading supersedes the original pleading and renders it of no legal effect, unless the amended complaint incorporates by reference portions of the prior pleading." *Williams v. County of Alameda*, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014).

Here, Plaintiff's Third Amended Complaint does *not* incorporate any of the prior three complaints, including the original Complaint, First Amended Complaint, and Second Amended Complaint, by reference. (Dkt. No. 79.) Though the Court did find that the Third Amended Complaint relates back to the original Complaint as required by Rule 15(c)(1)(B) for purposes of allowing amendment under Rule 15(a)(2) (*see* Dkt. No. 78), once filed, the Third Amended Complaint became the operative complaint, superseding prior complaints. As both parties agreed at oral argument and as the undisputed facts show, Plaintiff was incarcerated when the operative Third Amended Complaint was filed on September 30, 2021. (Dkt. No. 93-5 (Francisco Dec. ¶ 4).) Because Plaintiff was incarcerated at the time the operative Third Amended Complaint was filed, PLRA required Plaintiff to file a grievance with the Contra Costa County jail before filing this suit.

### 2. Plaintiff failed to exhaust his claims as required by the PLRA.

Plaintiff failed to exhaust his administrative remedies under the PLRA. The parties do not dispute that Plaintiff did not file a grievance within 48 hours of the incident at issue and that Plaintiff has never filed a grievance based on the incident while in Contra Costa County custody. (Dkt. No. 93-5 (Francisco Dec. ¶ 4).)

In opposition to Defendants' cross-motion for summary judgment, Plaintiff makes the novel assertion that he did in fact exhaust his remedies related to the new factual allegations added to the Third Amended Complaint. (Dkt. No. 99-1.) Plaintiff points out that a prisoner may amend a complaint without first complying with the PLRA if the complaint is amended to add new claims or factual allegations, provided that the remedies for the new claims are exhausted prior to amendment. *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2010). Plaintiff argues that the Third Amended Complaint added substantial new factual allegations based on evidence revealed during discovery. (Dkt. No. 99-1.) Plaintiff then states that "[t]his case is analogous to *Toscano* [… ] In

7

*Toscano*, as here, plaintiff exhausted his claims between the filing of the original complaint and the FAC." (*Id.*) However, as noted above, the undisputed evidence shows that Plaintiff *never* filed a grievance of any kind (Dkt. No. 93-5 (Francisco Dec. ¶ 4).), and Plaintiff has not pointed to any evidence that he ever filed a grievance. Thus, his failure to file a grievance at any time before he filed either the original Complaint, the First Amended Complaint, the Second Amended Complaint, and the Third Amended Complaint shows that he did not exhaust his claims as required by the PLRA.

### 3. There is no mental health exception to the exhaustion requirements of the PLRA.

Finally, Plaintiff argues that the custodial grievance process was unavailable to him because he was too mentally ill to understand the process while incarcerated and because the process became inaccessible to him once he was no longer in custody. (Dkt. No. 99-1.) There is no mental health exception to the PLRA's exhaustion requirement. *Johnson v. D.C.*, 869 F. Supp. 2d 34, 39-40 (D.D.C. 2012); *Williams v. White*, 724 Fed. Appx. 380, 383 (6th Cir. 2018); *Pratt v.Gamboa*, No. 17-cv-04375-LHK, 2020 U.S. Dist. LEXIS 87109, at *16 (N.D. Cal. May 15,2020); *Ramirez v. Rose*, No 2:19-cv-0827 KNP P, 2020 U.S. Dist. LEXIS 68196, at *15-16 (E.D. Cal. Mar. 4, 2020); *Provencio v. Parker*, No. 2:20-cv-01007-YY, 2021 U.S. Dist. LEXIS 137360, at *18 (D. Or. Apr. 12, 2021). Plaintiff's assertion that the PLRA's exhaustion requirements should not apply to his claims due to his mental illness is therefore unavailing.

Moreover, Plaintiff has not made a compelling case that he was too mentally ill to understand or complete the grievance process. Plaintiff has filed a single declaration indicating that he was unable to exhaust the Contra Costa County grievance procedures because of his severe mental illness. (Dkt. No. 97 (Bolden Dec. ¶ 2).) Unsupported by further evidence, Plaintiff's declaration conveniently asserts that he hears voices and that the voices he heard around the time of the incident specifically instructed him not to comply with the Contra Costa County custodial grievance procedure. (*Id.* (Bolden Dec. ¶ 4).) In contrast, Defendants adduce evidence showing that Plaintiff had normal mood and affect directly after the incident and that on the following day, Plaintiff showed a clear thought process, answered questions coherently, was alert and oriented,

and *denied auditory and visual hallucinations*. (Dkt. Nos. 93-12 (Rodriquez Dec. Ex. L); 93-11 (Rodriquez Dec. Ex. K).) "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2010) (citation omitted). Even if there were a mental health exception to the PLRA exhaustion requirement, which there is not, Plaintiff has not done enough to demonstrate a genuine issue of material fact regarding whether his mental health prevented him from filing a grievance.

### 4. Substantive Arguments.

Because the Court concludes that the issue of exhaustion under the PLRA is dispositive, the Court need not and does not reach the parties' arguments regarding whether Plaintiff is entitled so summary judgment on the substance of his claims.

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment. The Clerk of Court is directed to close the file.

**IT IS SO ORDERED**.

Dated: July 11, 2022

SALLIE KIM
United States Magistrate Judge